6   491
44   472

## READING, PECK & CO. *v.* JOHN DONOVAN.

The art. 1928, C. C., merely undertakes to secure a full indemnity to the aggrieved party.   It
does not authorize a speculation upon the default of one of the contracting parties.

Where a drayman contracts to haul all the cotton intended for a certain cotton press at a
fixed price per bale, and fails to comply with his contract, he is liable for the increased
price which the owners of the press may have to give for hauling the cotton, but is not
liable for the loss of profits which the press might have made by *compressing cotton* which
they failed to get, as the owners allege, from his not complying with his contract.

Where a carrier fails in a *contract to transport* merchandise from one part of the city to
another, no other indemnity ought to be recovered from the carrier than the expense of
performing the contract on his account, and such damage as the default of the carrier
occasioned directly to his employer.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.
   J. *Finney*, and *Moïse* and *Randolph*, for plaintiffs, upon the subject of the
consequential damages, made the following argument: If the defendant under-
took to haul this cotton for us, knowing that we wished it hauled with a view
to realize the profit on compressing, and yet failed to haul it without any good
excuse, and thus deprived us of the profit which we would otherwise have
made, and rendered dead and fruitless the large capital we had invested, it would
seem that he is liable for the damage he has caused.   The damage is the direct
consequence of his default, and is such damage as must have entered into the
contemplation of the parties at the time of the contract, and thus comes within
the meaning and intent of article 1928 of the Civil Code.   It must have entered
into the contemplation of the parties, for it consists in the stoppage of an
immense business in which a large outlay had been made, with a view to the
prosecution of which the very *contract*, whose breach causes the damage, had
been made.   The contract, whose breach is complained of, was a mere means
for the accomplishment of an end, to wit, the realization of profits by compress-
ing cotton.   The parties to that contract must have had in view the end which
was the object of their contract.   And we have shown that the cotton would
have been compressed if it had come to our press—for at that time all cotton
was compressed—and that it failed to come to our press, merely because the
defendant would not haul it, although he was pretending to do so.   And we have
shown that by compressing it, we would have realized a profit of forty-five or
fifty cents per bale.   We only claim forty cents in the petition; and we believe

it to be a claim well founded in law. Sedwick on Damages, 64, 65. L. C. 1928, § 1 and 2. 1 Domat's Civil Law, b. 3, tit. 5, s. 2, No. 4.

It will be said by the defence that even if we had got the cotton hauled and stored, it does not follow that we would have had the benefit of compressing it; that cotton is sometimes stored at one press and compressed at another. This might have happened, but it is very improbable. Men generally pursue their interest, and as the removal of the cotton to another press would have necessarily involved extra drayage and storage, and been productive of no advantage whatever to the shipper, it is very improbable that he would have incurred this additional expense.

The judge rejected this part of our claim, on the ground that it was a claim for probable profits and not recoverable at law. We think the learned judge misapplied the rule with regard to probable profits. It is laid down in the books, it is true, that courts of justice do not award compensation for the loss of speculative profits or probable profits. But we understand that rule to refer to a different kind of profits from those whose loss we are claiming compensation for. We have invested a large sum of money, in buildings, warehouses, machinery and labor, and the defendant, by his neglect and misconduct, renders dead and inert all this capital. We have shown that, but for his conduct, we would have had full employment, and would have realized a profit. Are these profits so speculative that a court of justice will not indemnify a party for the loss of them. If a court refuses compensation for the loss of the profits of an establishment of that kind, it in fact refuses compensation for the deprivation of the establishment itself. The establishment has no value except in the use of it and the earning of profits. If the court refuses to protect the profits, and the use of the property, it in fact refuses to protect the property itself. What we claim is a compensation for the stoppage of an immense and extensive establishment; and that compensation is measured by the work we would have got, and the price we would have received for it.

We will simply say, with regard to the plea of *vis major*, that all the testimony on both sides shows it to be ridiculous. A slight increase of force would have enabled the defendant to have fulfilled his contract with certainty. Nor can he excuse himself on the score of humanity: that he was afraid to expose his negroes to the cholera. He might have indulged his humanity and still fulfilled his contract, if he had not thought so much of his purse. Why could he not hire other draymen? Why could he not hire the same that we did? They had to work on the levee for some person; they did work on it for some person. And they might as well be exposed to the cholera in the employment of the defendant as any one else. The truth is, he abandoned his contract, simply because he found it unprofitable, and thought he could employ his negroes with more advantage otherwise. We hope your honors will increase the judgment in conformity to the views we have presented.

*C. Roselius*, for the defendant, contended: The plaintiffs complain that the defendant has violated his contract with them, for the hauling of an indefinite quantity of cotton, at the rate of six cents per bale. They allege that 26,031 bales of cotton have been hauled in the city of New Orleans, which the defendant was bound to haul according to the terms of said contract, but which he refused and failed to haul; on the hauling of which your petitioners have suffered a loss of $2,396 79 beyond the sum the said defendant was bound to do said hauling. This suit was instituted on the 9th of March, 1849. No supplemental petition was filed. It is true, the plaintiffs allege, that they will receive a large quantity of cotton on which they estimate their loss at $2700. But it is submitted that, under a contract like that on which this suit has been instituted, no prospective damage can be claimed, and at all events not recovered without a supplemental petition, in which the actual damages suffered are set forth. It is therefore submitted, that under no aspect of the case can the plaintiffs recover more than $2396 79. It is, however, insisted that under the evidence in this record, the plaintiffs are not entitled to recover damage, because they did not resort to the proper means of ascertaining the loss resulting from the defendant's non-compliance with his contract. When they found that he did not haul the cotton as he was bound to do, they should have employed other draymen to haul it, and then have charged him with the difference. Instead of pursuing this course, they thought proper to purchase teams, &c., and now seek to make the defendant responsible for the money invested and the expense incurred by them. This, surely, is not the correct mode of ascertaining the amount of damage for

which the defendant is liable. It is for the·plaintiffs to make out their case clearly; and having failed to do so, they ought to be non-suited.

The judgment of the court *(Preston,* J., not sitting in the cause, having been consulted as counsel) was pronounced by

EUSTIS, C. J.  This appeal is taken by the defendant from a judgment of the Court of the Third District of New Orleans rendered against him for the sum of four thousand one hundred and sixty-six dollars fifty cents, being the amount of damages sustained by the plaintiffs for a breach of a contract on the part of the defendant. The plaintiffs are the proprietors of a cotton press, and the defendant is a drayman; and the contract was, that the defendant, for the period of one year from the 1st September, 1848, should haul all the cotton landed in New Orleans, consigned to any of the plaintiffs' customers, to their press warehouses, for the sum of six cents per bale. The defendant broke his contract, and the plaintiffs hauled the cotton themselves at an expense of fifteen cents per bale. The district judge allowed them the difference between the two sums on 44,500 bales, making the aggregate of four thousand and five dollars, and some small items, which form the amount of the judgment.

The plaintiffs in their answer have prayed an amendment of the judgment in their favor. They allege that under the evidence they are entitled to recover from the defendant the sum of seven thousand five hundred dollars, and ask for an amendment of the judgment accordingly. The principal ground for increasing the amount of the damages allowed by the district judge is, that the defendant, by his breach of the contract, deprived them of the·profits they would have made on a large quantity of cotton by pressing it. This, it is alleged, was by the neglect and fault of the defendant diverted from the plaintiffs' press; and they claim the profit of forty cents per bale lost to them thereby. The district judge did not consider that this claim for the loss of profits rested on grounds sufficiently certain to warrant a judgment, and disallowed it.

The proposition put by the counsel for the plaintiffs is, that if the defendant undertook to transport on his drays the cotton for the plaintiffs, knowing the profit to be realized on the pressing, and failed to transport it without any good excuse, he thus deprived them of the profits which they would have made, had the cotton been transported in time; and this damage is the direct consequence of the defendant's default, and is such as must have entered into the contemplation of the parties at the time of the contract, for which he, the defendant, is in law responsible.

We understand the Code, art. 1928, in laying down the rules upon which damages are to be assessed on a breach of contract, merely undertakes to secure a full indemnity to the aggrieved party, and does not authorize a speculation upon the default of the other contracting party.

On the default of *Donovan* to perform his contract, the plaintiffs were authorized to cause it to be performed at his expense. They could have incurred any expense in the furtherance of the contract, and *Donovan* would have been obliged to reimburse them. Let us suppose a drayman to contract with an importing house to transport to their warehouses the cargoes consigned to them: a cargo of wines arrives, the drayman refuses or delays to transport it, it could hardly be maintained that the drayman would be liable to the importer for any loss of profit on the wine, accruing between his default and the time when the importer chose to take his wine from the vessel to his warehouse. The case of a retailer buying a cask of liquor, and making a bargain with a drayman to transport it to his shop, which the latter refused to perform, presents a still

stronger case. The carrier would be liable for the consequences of his delay, and his employer would be authorized to have the contract performed at his expense; but as to any contingencies resulting from the delay of the employer, the drayman has nothing to do with it.

We have always held carriers accountable for damages resulting from unnecessary delay in the performance of their contract, where it was not justified by some sufficient excuse in law. In *Rathbone* v. *Neal*, 4 Ann. 563, we held the masters and owners of a vessel liable to a shipper for the loss of a market for his goods, in consequence of unnecessary delay on a voyage from Boston to New Orleans. But it appears to us that where the delay consists in not transporting, in a proper time, merchandize from one part of the city to another, no other indemnity ought to be recovered from the carrier than the cost and expense of performing the contract on his account, and such damage as the default of the carrier occasioned directly to his employer. Even where the inexecution of the contract proceeds from fraud, the damages allowed must be confined to those which are the immediate and direct consequence of the breach.

The very uncertainty which the district judge recognizes as attending the evidence on which this claim for profits rests, is a necessary consequence of its remoteness from the cause assigned, and is one of the reasons of the limitation which the law wisely imposes on all claims for damages.

The judgment of the district court is therefore affirmed, with costs.