## AMERICAN SURETY CO. OF NEW YORK v. WOODS.[1]

### (Circuit Court of Appeals, Fifth Circuit. January 8, 1901.)

### No. 919.

**1. DAMAGES—BREACH OF CONTRACT—LOUISIANA STATUTE.**

Rev. Civ. Code La. art. 1934, which provides that, "where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained and the profit of which he has been deprived," merely undertakes to secure full indemnity to the party aggrieved; and under it, as by the rule of the common law, to authorize a recovery of substantial damages there must not only be proof of the breach of the contract, but also of actual damages resulting to the plaintiff.

**2. SAME.**

Where a contractor employed to do certain work has, without legal cause, abandoned the work, unfinished, the right of the employer to sue for breach of the contract does not depend on his having completed the work; but where he has himself also abandoned it, and it has never been completed, the sum which the contractor would have lost had he fulfilled his contract, or the difference between the contract price and the cost of completion, cannot be taken as the measure of damages.

**3. SAME—MEASURE FIXED BY CONTRACT—MODE OF ASCERTAINMENT.**

A contract for the doing of certain work, which provides that in case of delay in doing the work the employer may take charge thereof and complete it at the cost of the contractor, not only provides the measure of damages for the breach of the contract by the contractor if he shall fail to complete the work, but also the manner in which the amount of such damages shall be ascertained; and under the provision of Rev. Civ. Code La. art. 1934, that "when the debtor has been guilty of no fraud or bad faith he is liable for only such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract," on the failure of the contractor to complete the work, without fraud or bad faith, the employer cannot recover as damages for breach of the contract the difference between the contract price and the cost of completing the work, as estimated by experts, where it abandoned the work, and in fact expended no money in its completion.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

On December 7, 1894, Stewart & McDermott made a written contract with the New Orleans Sewerage Company for the construction of certain sewers and their appurtenances in the city of New Orleans. By this contract the sewerage company agreed at its own cost and expense to furnish all the material required in the construction of the sewers and their appurtenances. The contractors, Stewart & McDermott, bound themselves to furnish all the labor required to properly construct the sewers and their appurtenances in a territory or portion of the city of New Orleans defined by certain maps "now on file in the office of the sewerage company." The nineteenth section of the contract is in these words: "In case of any unnecessary delay in doing the work, in the opinion of the engineer, he shall notify the contractors, in writing, to that effect. If the contractors shall not within fifteen (15) days after receipt of such notice take such measures as will, in the judgment of the engineer, insure the satisfactory completion of the work, the engineer may then, by and with the consent of the company, notify the aforesaid contractors to discontinue all work under this contract; and it is hereby agreed that the contractors are to immediately respect said notice and stop work, and to cease to have any right to possession of the ground, provided all things hereby agreed to be

---

[1] For opinion on rehearing, see 106 Fed. 263.

furnished or done by the company shall have been promptly furnished or done. The engineer shall thereupon have the power, under the direction of the company, to place such and so many persons as he may deem advisable, by contract or otherwise, to work at and complete the work herein described, and to charge the expense of said labor to the aforesaid contractors, and the expenses so charged shall be deducted and paid by parties of the first part out of such money as may then be due or at any other time thereafter becomes due to the said contractors under and by virtue of said agreement, or any part thereof; and, in case such expense is less than the sum which would have been payable under this contract if the same had been completed by the parties of the second part, they shall be entitled to receive the difference, and in case such expense is greater the parties of the second part shall pay the amount of such excess so due." The chief engineer of the sewerage company was to estimate on the last day of each month the total amount of work completed according to specification. Ninety per cent. of the amount earned on work so completed was to be paid the contractors before the 10th of the succeeding month, 10 per cent. being reserved. These payments were to be made according to specified prices for different kinds of work, all stated in detail in the contract. The contract recites the execution and delivery by the American Surety Company, as surety for the contractors, of a bond in the sum of $100,000, bearing even date with the contract. The condition of the bond is that Stewart & McDermott "shall well and truly, and in good, sufficient, and workmanlike manner, perform the work mentioned in the aforesaid agreement, in accordance with the terms and conditions therein stipulated, and in each and every respect comply with the conditions and covenants therein contained, and shall from time to time furnish a new bond for a proportionately reduced amount, as provided in said contract." In January, 1895, Stewart & McDermott began work, and continued until November 4, 1895. On that day they refused to proceed further with the work, and repudiated the contract, on the grounds that a fraud had been practiced upon them in obtaining it, and that, even if the contract were valid in its inception, they had been released from it by reason of a violation of its terms on the part of the sewerage company. In June, 1896, the sewerage company went into the hands of a receiver, on the petition of creditors applying to the civil district court for the parish of Orleans. The sewerage company made no attempt, after the repudiation of the contract by Stewart & McDermott, either to complete the work itself, or to procure it to be done by others. It was never completed. All of the assets of the sewerage company, including the franchise or right to construct the sewers, but excepting the claim urged in the present suit, were sold at public auction for about $90,000. In March, 1897, this suit was brought by A. A. Woods, receiver of the New Orleans Sewerage Company, against the American Surety Company, for the full amount of its bond; the plaintiff averring that said sewerage company had sustained damages in excess of that sum by reason of the breach of the contract. The petition alleged the breach of the contract by Stewart & McDermott, and then alleged, as a ground of damage, "that if said Stewart & McDermott had done the work which they agreed to do under said contract in a proper and workmanlike manner, and within the delay provided by said contract, the cost of said work to said New Orleans Sewerage Company would have been the sum of seven hundred and thirty-nine thousand five hundred dollars, whilst the cost of the work already done by said Stewart & McDermott, together with the amount which it would have cost and will cost said company to complete the work which said Stewart & McDermott by said contract agreed to do, will be, and would at the time when said Stewart & McDermott abandoned said work have been, the sum of nine hundred and twelve thousand and ninety-nine $09/100$ dollars ($912,099.09), and that the difference between said two sums is the sum of one hundred and seventy-two thousand five hundred and ninety-nine $09/100$ dollars, which amount petitioner is entitled to recover from said Stewart & McDermott and the said American Surety Company, their solidary surety." An answer was filed by the American Surety Company, traversing the plaintiff's claims, and making special defenses not material to be stated. There was evidence in the case tending to show that it would have cost the sewerage

company greatly more to construct the sewers than the sum for which Stewart & McDermott had agreed to construct them. At the request of the counsel for the plaintiff the circuit court charged the jury as follows: "(1) In cases of contracts between employer and contractor, providing for the performance and completion of constructions as described in the contract, if the contractor abandons the work before completion, and refuses to complete the same, having no lawful cause for such action, the measure of damages which the employer is entitled to recover is the difference between the cost of completing the work at the contract price, and what it would cost him to complete the work, or to procure the work to be completed by others. (2) After the abandonment of the contract by Stewart & McDermott, the sewerage company would have had the right to have gone on and completed the work itself, or to have let out a contract for the completion of the work to other contractors, upon the best terms attainable; and in that case they would have had the right to recover, as damages, the difference between what it would have cost them if Stewart & McDermott had complied with the contract and what it actually cost the company to complete the work. But the sewerage company was not bound to complete the work, or to employ anybody else to complete it, and they had the right to prove by competent testimony what it would have cost them to complete the work or have it completed, and to recover from Stewart & McDermott the difference between the necessary cost of completion, as thus established, and what it would have cost under their contract with Stewart & McDermott." The American Surety Company duly excepted to the action of the court in giving this charge. The jury found a verdict for the plaintiff, A. A. Woods, as receiver of the sewerage company, against the American Surety Company, for $90,000. To review and reverse the judgment on this verdict the American Surety Company has sued out this writ of error.

Thomas W. Bullitt and W. B. Spencer (W. W. Howe, Wm. Marshall Bullitt, and C. P. Cocke, on the brief), for plaintiff in error.

E. B. Kruttschnitt and Chas. E. Fenner, for defendant in error.

Before PARDEE, McCORMICK and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question to be considered is the charge of the court on the measure of damages. The instruction, in effect, was that the measure of damages was the difference between the contract price and what it would have cost to finish the sewers, and that, to recover this difference, it was not necessary for the sewerage company to complete the work. "Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained and the profit of which he has been deprived," under certain exceptions and modifications not material to this case. Rev. Civ. Code La. art. 1934. This statute merely undertakes to secure full indemnity to the aggrieved party. Reading v. Donovan, 6 La. Ann. 491. Article 2769 is the same in legal effect. To authorize recovery under the statute, two things must concur,— the inexecution of the obligation, and damages to the party complaining. This statute does not conflict with the common law, for by its rule there must be, to authorize a recovery, a breach of the contract, which causes damages. If the breach only is shown, there could be only a verdict for a nominal sum. Sedgw. Meas. Dam. (8th Ed.) § 98. When a contractor is discharged unlawfully, he can, in a suit for damages, recover his outlay and the probably certain profits he would

have made if he had been permitted to proceed with the work. His profits in such case would have been a gain he would have received but for the unlawful act of his employer. The courts uniformly sustain the right to recover profits in such cases. U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; Railroad Co. v. Howard, 13 How. 307, 14 L. Ed. 157; Masterton v. Mayor, etc., 7 Hill, 61. It is argued from this proposition that, if the contractor wrongfully abandons the contract and refuses to do the work he has contracted to do, the employer, in a suit for damages for breach of the contract, may recover the difference between the contract price and the sum which it would have cost the employer to have the work done, although the employer in fact does not have the work done. To apply the principle to this case, the contention is that, as Stewart & McDermott agreed to finish the sewers for sums aggregating $739,500, and then abandoned the work, and as it would have cost the sewerage company $912,099.09 to complete the work, the receiver of the sewerage company is entitled to recover the difference between the contract price and what it would have cost to finish the work, to wit, $172,599.09, though in fact the work was not finished, and no money actually expended to finish it. By the terms of the contract sued on, the contractors were to furnish all necessary labor to excavate and build the sewers. The sewerage company was to furnish at its own cost all material of every kind required to construct the sewers. We must keep in mind, therefore, that the contract on the part of the contractors was one to labor or to furnish labor. The question involved here can be made clear by an illustration of a suit on a short contract to do work. A merchant employs a clerk, by written contract, to work for one year at $50 a month, payable monthly. The clerk works two months, and without cause repudiates the contract and quits, receiving only the two months' pay. The merchant sues for damages for breach of the contract. The proof shows that he could not get another clerk to do the same work for the succeeding 10 months for less than $100 a month. But it also appears that he did not employ any one to take the clerk's place. Can the merchant recover $500,—the difference between the contract price and the cost of securing another clerk, that he never employed? Does the fact, if it be conceded as a fact, that the clerk would have lost $500 by working for less than his services were worth, show that the contract was worth that sum to the employer, and entitle him to recover a sum not paid, but which would have been paid if he had employed a substitute?

It is contended that as the contractor, in the case of a breach of the contract by the employer, can recover his lost profits, and that he would be permitted to prove what it would cost to complete the work he was prevented from doing, and, where it cost less than the contract price, could recover the difference, as the profit which he would have made; that, in all fairness, the same rule should apply when a breach of the contract is made by the contractor. There are several considerations making differences in the two cases. When the contractor is stopped from work by the owner or employer who is to furnish the materials, he cannot go on and finish the work. He cannot, by com-

pleting the work himself or by others, show just what his profit, if any, would be. When he sues for damages, therefore, he must, to recover profits, prove, if he can, what he would have made had he not been stopped. He is prevented from finishing the work, and such evidence is necessary to show what gain or profit to him was in the contract. On the other hand, when the contractor abandons the work the owner or employer is left in possession. He is free to employ others to finish the work. The contract often, as in this case, provides that he may employ others to finish it if the contractor quits. He therefore usually has it in his power by employing others to complete the work and ascertain exactly the amount of his damages. The contractor, when stopped or unlawfully discharged by the breach of the contract by the employer, has not this power. For the breach of a contract the injured party is entitled in a suit for damages to receive compensation for his loss,—compensation and nothing more. "Damages are given as a compensation, recompense, or satisfaction to the plaintiff for any injury actually received by him from the defendant. They should be precisely commensurate with the injury,—neither more nor less,—and this whether it be to his person or estate." Dow v. Humbert, 91 U. S. 294, 299, 23 L. Ed. 370; 2 Greenl. Ev. § 253. The contractor or builder stopped from his work by the breach of the contract committed by his employer has clearly lost the profit that he would certainly have made by the completion of the work. Can it be said that the employer who has obtained a contract securing services at cheap rates, when the contractor refuses to do the work, has certainly lost the difference between the contract price and the cost of having the work finished, when the employer does not have the work finished? Is this difference a certain gain or profit or value that the employer has lost? His loss would be certain, we think, only in the event he had the work done at a cost greater than the contract price. The contention that the measure of his damages is the difference between the contract price and a greater price which he has never paid must be based on the erroneous theory that the contract is necessarily worth to him the sum above the contract price that it would cost the contractor to finish the work. The fact that the contractor would lose a fixed sum by completing the work does not show that the employer loses that sum by the failure of the contractor to finish it. If the contractor stops the work, and the employer does not complete it, it cannot be said he has been damaged what the former would have lost had he not stopped the work. When the contractor breaks his contract he is liable to his employer for the amount the employer is damaged, but it does not follow that he is liable for the amount that the contractor saved by his abandonment of the contract. It is a mistake, we think, to assume that whatever the contractor saved by stopping the work was lost by the employer who does not complete it.

The precise legal question under discussion was decided in the case of Hunt v. Railroad Co. (C. C.) 36 Fed. 481. In that case a counterclaim was filed in which it was claimed that the defendants will be compelled to pay out large sums of money in excess of the contract price to complete the work that the plaintiff undertook, and in so doing

would be put to a large amount of trouble and expense, to defendant's damage $100,000. In deciding the motion to strike out this item of damages from the counterclaim, Judge Deady said:

"The damages claimed on account of the estimated difference in the cost of constructing the road by the defendant and the contract price are, in my judgment, too uncertain to be allowed. It can only be conjectured what the cost of constructing the road some time in the future will be. Owing to the fluctuations in the price of labor and materials, it may cost more or less to construct the road in 1888–89 than in 1887–88. Besides this, they are contingent. The defendant may never construct the road, and until it does, and necessarily at a greater cost than the contract price, it cannot be said to have sustained any damage by the breach."

It seems to us that the conclusion of the court in this case was correct, and that, whatever other damages may have been sustained, it cannot be said, before the work has been completed at a greater cost, that the injured party has sustained damages to the amount of the difference between the contract price and the cost of completing the work. In the absence of legal defense the employer can, of course, recover damages for a breach of the contract of employment by the employé. Where the employé or contractor without legal cause abandons the work, unfinished, the right of the employer to sue for the breach of the contract is not dependent on his completing the abandoned work. He may sue at once and recover of the employé or contractor such damages as under legal rules he can show he has sustained. But when the employer does not incur the expense of completing the abandoned work, and determines not to finish it, the sum that the contractor would have lost had he complied with the agreement and finished the work, or the difference between the contract price and the cost of completion, cannot be taken as the measure of damages.

Counsel for the defendant in error have shown great industry and ability in presenting argument and precedents claimed to be analogous; but, with all their research, no case is found where an employer who had not completed the work was allowed, in a case like this, to recover the difference between the contract price and what it would have cost to finish the work. The case mainly relied on to sustain the charge of the court as to the measure of damages is Kidd v. McCormick, 83 N. Y. 391. That case, we think, does not sustain the contention of the defendant in error. Kidd sold to McCormick certain lots, and took a mortgage on them for the purchase money; McCormick agreeing to build specified houses on the lots within a fixed time. McCormick began to build the houses, but failed to build them within the time agreed upon in the contract. He finally abandoned the work altogether. Kidd then foreclosed the mortgage, and there was a deficiency of several thousand dollars. For this deficiency he sued McCormick and other defendants. We understand from the opinion that in fact the plaintiff completed the houses after the work was abandoned by the defendants. We find this statement in the opinion, on page 399:

"It was the duty and the interest of the plaintiff to mitigate the damages therefrom as much as he could. To that end he took possession of the work and finished it to availability."

The part of the opinion which is quoted as sustaining the contention of the defendant in error is as follows:

"He has a right to a house as good as that which the defendants agreed to furnish, and his damages is the difference between the value of the house furnished and the house as it ought to have been furnished. One kind of testimony by which that difference may be known is that of experts, saying what would have been the value of the one, and what is the value of the other. Another kind of testimony is that of experts,—what it would cost to complete the unfinished house up to the mark of the contract. Another kind is, when the house has been in fact finished up to that mark, what it did in fact cost to finish it. But these ways all lead to the same end,—what is the difference in value between the unfinished house and a house had it been finished as agreed upon. And this is to be observed of the last-named kind of testimony: First, that the plaintiff is not under obligation to go on and finish the house."

It will be observed that the court states that "his damages is the difference between the value of the house furnished and the house as it ought to have been furnished." It is not held that the measure of damages is the difference between the contract price and what it would have cost to finish the house. It is stated, however, that the testimony of experts would be admissible to show what it would cost to complete the unfinished house up to the mark of the contract. As the houses were in fact completed, the observation that the plaintiff was under no obligation to go on and finish them was unnecessary to the decision of the case. And this remark is not used as controlling the question of the measure of damages, but it is made in reference to the admissibility of evidence to prove damages.

There are other reasons for our conclusion, based on the nineteenth section of the contract. The substance of this section is that, if the contractors delayed or failed to do the work, the sewerage company could take charge of it and finish it. The company is authorized to charge the expense of labor to the contractors. Such cost is to be paid out of the money due to the contractors or to become due by the contract. If the expense of doing the work was less than the sum that would be due and payable under the contract, the contractors were to receive the difference; and, if the expense was greater, the contractors should pay the amount of such excess. It is clear, therefore, that the parties to the contract anticipated that the contractors might not finish the work, and provided for the measure of damages on the completion of the work by the sewerage company at a cost greater than the contract price. In article 1934 of the Revised Civil Code of Louisiana it is declared that, "when the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract." In discussing the question of damages the common-law authorities frequently speak of them as either proximate or remote, and it is only the former that are allowed to be recovered, because it is said they are such as were in the contemplation of the parties to the contract. Hadley v. Baxendale, 26 Eng. Law & Eq. 398. In Goodloe v. Rogers, 10 La. Ann. 631, construing this statute, the court said that "when there is

no bad faith or fraud the obligor is liable only for damages that may reasonably be supposed to have been contemplated by the parties at the time of the contract." In this respect, as was said in the case last cited, "the doctrine of the civil and common law is not materially different." The case of Hunt v. Railroad Co. (C. C.) 36 Fed. 481, involved the construction of a contract containing a similar provision. On this point Judge Deady said:

"The contract gave the defendant the right whenever, in the judgment of its general manager, the work was delayed so as 'to imperil' its completion within the time limited, 'to assume entire control of the work' and complete it, and 'any outlay so incurred by the defendant in excess of the contract price of the work shall be a charge against any balance' due to the contractor for work done under the contract. This provision in the contract indicates plainly that the parties did not contemplate the payment of any damages for the delay or failure to construct the road until it was ascertained by the completion of the same what amount, if any, it cost in excess of the contract price."

This provision of the contract cannot be ignored in deciding this question. The provision seems to have been made for the benefit of both parties. It gave to the sewerage company the right and power to take charge of the sewers and finish them on account of the delay or failure of the contractors. On the other hand, it secured to the contractors any sum that might be left of the unpaid contract price after the sewerage company had paid for the completed work. It also fixed and limited their liability for damages on account of their failure to finish the work, so far as this item of damages is concerned, to such excess as the sewerage company would have to pay over the contract price. This clause of the contract, conceding a different rule to prevail in its absence, rescued the case from the uncertain and speculative control of expert witnesses, and applied to it the practical test of actual cost. This secured to the contractors and their surety a valuable right. They should not be deprived of it. From the contract in this case, having due regard to section 19 of it, we do not think it can "reasonably be supposed" that the parties contemplated that for a failure by the contractors to finish the work they were to be held liable for any outlay which might be required to complete it, before the sewerage company was at any expense on that account. The judgment of the circuit court is reversed, and the case remanded, with direction to grant a new trial.