## AMERICAN SURETY CO. OF NEW YORK v. WOODS.

### (Circuit Court of Appeals, Fifth Circuit.   March 19, 1901.)

On Rehearing. Affirmed.
For former opinion, see 105 Fed. 741.

PER CURIAM. In denying the application for rehearing, so vigorously urged in this case, we deem it proper to call attention to the fact that the second, third, and fourth defenses maintained by the plaintiff in error in the court below, and insisted upon in this court, are as follows:

#### "Second Defense.

"As to a part of the work required by the contract of Steward & McDermott, viz. that lying 'behind' the ordinance limit, the evidence shows conclusively that no plans locating or otherwise describing the work were in existence when the contract was executed. To that extent the contract was inoperative and void for uncertainty. Therefore the court erred in permitting and directing the jury to base its verdict for damages in part upon the failure of Steward & McDermott to perform that work.

#### "Third Defense.

"(1) Plans P-8, P-9, and P-10, to the exclusion of all others, show the entire work which Steward & McDermott contracted to perform.

"(2) By express direction of the sewerage company, and by agreement of that company with Steward & McDermott, plans P-8, P-9, and P-10 were, in actual construction, abandoned, and other plans, viz. plans P-11 and P-11A, were substituted therefor.

"(3) Plans P-11 and P-11A varied in many important particulars from P-8, P-9, and P-10, in effect constituting a new and different sewerage system.

"(4) That abandonment and substitution were made without the actual or implied consent of the American Surety Co.

"(5) Therefore there was no default or wrongful failure by Steward & McDermott to perform the work guarantied by the surety company; on the contrary, the surety company was released by the changes from the obligation on its bond, and the court erred in refusing to direct a verdict for defendant.

#### "Fourth Defense.

"Even if P-11 and P-11A and the pencil map or sketch be considered as contract plans, and to that extent as modifications of P-8, P-9, and P-10, still there were subsequent changes made in them without the surety's consent, which released the surety from its bond."

The force and effect of these defenses can only be avoided by finding that the work required by the contract to be performed by Steward & McDermott was not to be according to any specified, definite plan,

but was to build and carry out a sewerage system which, as circumstances might thereafter determine, would require more or less work of the several different kinds specified in the contract to be performed by the contractors. This appears from the apparently conceded fact that, for the receiver of the sewerage company to recover on the lines laid down in his petition, he must disembarrass himself of the contract between the city of New Orleans and the sewerage company, and also of the plans referred to in the contract, because the evidence clearly shows that, after the Steward & McDermott contract was entered into, decided changes were made in the plans and specifications of the work to be performed.

As to the subject-matter of the contract between Steward & McDermott and the sewerage company, the learned counsel for the defendant in error say:

"The contract between Steward & McDermott and the sewerage company was not to build any specific set of sewers, nor was it a contract to build a set of sewers according to any given set of plans. The contract was: (1) To build sewers and appurtenances, including such house connections as might be required upon the orders of the engineer in charge of the work, and to construct manholes, flush tanks, and force and flushing mains in the 'territory bounded by Louisiana avenue on the upper side, by Enghein street on the lower side, by Claiborne street from Enghein street to the New Canal, by Rampart street from New Canal to Washington avenue, and thence by Baronne street on the west side, and by the Mississippi river on the east side. (2) Also to build that portion of the main sewer and such laterals as are necessary to complete the system lying behind this territory. In the territory firstly described all the work was to be done by Steward & McDermott; that is to say, all the work that they might be called upon to perform. That work was entirely indefinite, and was to be any work which they were called upon to perform at the price per foot named in the specifications. In other words, the contract as to this portion of the work referred to no plans. It was as indefinite as a contract to furnish to a factory all the anthracite, bituminous coal, coke, petroleum, and cord wood which it might need for use as fuel during a fixed period, at a fixed price per ton of anthracite, per ton of bituminous coal, per ton of coke, per barrel of petroleum, and per cord of wood, with no obligation whatever on the part of the factory to consume any given quantity of any one of the five articles named, but accompanied by a mere estimate on the part of an official of the company that they expected to use a certain quantity of each character of goods."

If these views as to the scope and effect of the contract are correct, then it follows that the price for which Steward & McDermott agreed to do the work was indefinite and uncertain, depending upon the changes in the plans thereafter to be made by the engineer,—calling for more or less work,—and only to be made certain by a performance, and that the cost of completing the work after the failure of Steward & McDermott depended upon the same contingencies. In short, the price to be paid Steward & McDermott, the actual cost of the entire work, and as a corollary "the difference between the contract price and the cost of completion," were matters not fixed and certain, nor capable of being made certain,—only estimated and to be estimated. We regard this, taken in connection with the nineteenth section of the contract and the circumstances surrounding the whole case, as conclusive that the amount the contractor would have lost, or the difference between the contract price and the cost of completion, never entered into the contemplation of the parties at the time of the contract

as the probable rule of damages in case the contractors should abandon the work, and it should never be completed by the sewerage company or any other contractor on their behalf. The rehearing in this case is denied.