(100 South. 704)

No. 24408.

### ILLINOIS CENT. R. CO. v. ORLEANS–KENNER ELECTRIC RY. CO. et al.

(March 17, 1924. Rehearing Denied by Whole Court June 6, 1924.)

*(Syllabus by Editorial Staff.)*

1. Street railroads ⬅➡41 (1)—Measure of damages for breach of agreement with other railroad to construct bridge at crossing.

Where electric railroad, in consideration of the right to cross tracks of another railroad,

agreed to construct bridge at crossing, the second railroad, on first railroad's failure to construct bridge, could recover as damages sustained the value of the bridge at time specified for delivery, as shown by proof of what it would have cost to construct bridge, and was not limited to difference in value between the property with and without the bridge.

**2. Street railroads ⬥41(1)—Railroad held not required to construct bridge on electric railroad's failure to so do, but entitled to recover damages.**

Under contract giving electric railroad right to cross other railroad's tracks, and requiring first railroad to construct bridge at crossing, and giving second railroad the right on first railroad's failure to construct bridge to proceed with construction, the second railroad, on first railroad's failure to construct bridge, was not required to proceed with construction, but could recover actual damages sustained by reason of first railroad's failure to construct bridge.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by the Illinois Central Railroad Company against the Orleans-Kenner Electric Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

P. M. Milner, of New Orleans, for appellant Maryland Casualty Co.

John D. Miller, of New Orleans, for appellant Orleans-Kenner Electric Ry. Co.

Lemle, Moreno & Lemle, of New Orleans (W. S. Horton and R. V. Fletcher, both of Chicago, Ill., and Hunter C. Leake, of New Orleans, of counsel), for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. The tracks of the Orleans-Kenner Electric Railway Company (hereinafter referred to as the "Kenner Company") were in process of construction in 1915. It was necessary for its tracks to cross those of the Illinois Central Railroad Company (hereinafter referred to as the "Railroad Company") at Harahan yard, in the parish of Jefferson, and accordingly negotiations were begun with the end in view of obtaining the right to cross. These negotiations resulted in the execution of a contract between the two companies on March 16, 1915. By this contract the Railroad Company granted to the Kenner Company the right to construct, maintain, and operate a double-track electric railway under its tracks at Harahan yard. In order to enable the Kenner Company to accomplish these things it was necessary that the Railroad Company should raise its tracks to a sufficient height to permit the cars of the Kenner Company to pass under them. It was therefore stipulated that the Railroad Company should raise its tracks at the crossing granted, at its own expense, to a height not exceeding 13 feet above the elevation existing at the time of the execution of the contract, so as to provide the necessary clearance between the tracks of the Kenner Company and the lowest downward projection in the permanent structure to be built for the support of the tracks of the Railroad Company, and thereby provide a passage for the cars of the Kenner Company. To accomplish this, and at the same time to enable the Railroad Company to operate its trains and the Kenner Company to make use of the crossing, during the progress of the work, it was deemed necessary to erect a temporary structure of sufficient strength to support the trains of the Railroad Company while going over the crossing. The contract provides for such a structure, and the Kenner Company bound itself to furnish the necessary material upon the ground for its construction, and the Railroad Company obligated itself to erect the structure and to remove it upon the completion of the bridge, the Kenner Company to pay the expense incurred in erecting and removing it.

Article 4 of the contract, which we quote in full as it plays an important part in the determination of this case, reads as follows:

"When the Railroad Company shall have completed said temporary work and the elevation of its tracks, the Kenner Company shall, and hereby agrees that it will, construct a steel and concrete bridge at the location aforesaid according to plans and specifications approved by the chief engineer of the Railroad Company, to carry the two present tracks of the Railroad Company over the tracks of the Kenner Company at said crossing, and the said bridge shall upon completion become the property of, and shall be maintained, by the Railroad Company. Provided, however, that if, in the opinion of said chief engineer, the progress of the work on said permanent bridge is unduly delayed the Railroad Company shall have the right, upon giving the Kenner Company ten (10) days' notice in writing of its intention so to do, to proceed with the completion of said work, and the railroad company is hereby authorized to render a bill against the Kenner Company for the cost of all material furnished and work performed in the completion of said bridge, and the Kenner Company shall, upon receipt of said bill, pay the amount thereof to the Railroad Company."

The contract then provides that the Kenner Company shall deliver to the Railroad Company a bond, in the penal sum of $7,500, conditioned upon the faithful performance by the Kenner Company of the obligations stipulated in article 4 of the contract, quoted above—that is to say, conditioned upon the construction of the steel and concrete bridge to the satisfaction of the chief engineer of the Railroad Company, or, in case that company should elect to complete the bridge, as provided in article 4 of the contract, then conditioned upon the payment of all expenses incurred by it in constructing the bridge. The contract contains other provisions, not necessary to mention, or, at least, to mention at present.

The Kenner Company furnished the bond mentioned in the preceding paragraph with the Maryland Casualty Company as surety thereon. The bond sets out in full article 4 of the contract, quoted above, and contains conditions, among others, to the effect that, if the Kenner Company shall indemnify the Railroad Company against any loss or damage arising directly from the failure of the Kenner Company to faithfully perform its contract, then the bond shall be void, otherwise it shall remain in full force and effect, and to the effect that no claim, suit, or action, by reason of any default of the Kenner Company, shall be brought against that company, or its surety, the Maryland Casualty Company, after March 5, 1916, nor upon any claim for damages accruing after that date.

The Railroad Company did all that it was required to do under the contract. It furnished the Kenner Company with the plans and specifications, approved by its chief engineer, for the construction of the steel and concrete bridge, erected the temporary structure called for by the contract, elevated its tracks to the required height, and notified the Kenner Company that everything was in readiness for the construction of the steel and concrete bridge. However, the Kenner Company, notwithstanding the fact that the Railroad Company had complied with its part of the contract, failed to construct the bridge, and in November, 1915, the Railroad Company made written demand on the Kenner Company to construct it, thereby placing it in default, and sent a copy of the letter to the surety. Neither the Kenner Company nor its surety made any response.

As a result of the failure to construct the bridge the Railroad Company in February, 1915, less than a month before the expiration of the time within which it was permitted to sue under the terms of the bond, instituted this proceeding to recover judgment against the Kenner Company and its surety, in solido, in the sum of $7,500, the amount of the bond, and against the Kenner Company for the further sum of $6,169, with legal interest on both amounts from judicial demand until paid. These sums aggregate

$13,669, the amount required to construct the bridge.

The petition sets forth, in substance, the foregoing facts. The contract, the bond, and the written demand, placing the Kenner Company in default, are attached to and made part of the petition.

The Maryland Casualty Company excepted to plaintiff's demand on the ground that it is premature, and further upon the ground that the petition discloses no cause of action. The Kenner Company and the Maryland Casualty Company then filed their answers.

The exception of no cause of action, here filed, involves within its scope the right of one to sue on a contract for the value of that which one of the parties to the instrument has obligated itself to do, but which it has failed to do, or, in other words, to sue for the cost of the thing which one of the parties to the contract bound itself to deliver, but failed to do so, when the cost may be said to be the equivalent of the value of the thing in its completed state which it was agreed should be delivered. In considering this phase of the exception it should be borne in mind that the contract forming the basis of the suit is one by which one of the parties to it granted to the other the right to cross its tracks, in consideration of the construction, by the party of the second part, or grantee, of a steel and concrete bridge, at the crossing granted, and of the delivery of the bridge, in full ownership, to the party of the first part, or grantor, the party of the second part to bear, in addition to the cost of the construction of the bridge, only the cost of the temporary structure called for by the contract, and the expense incurred in removing such structure. It should also be borne in mind, in considering this phase of the exception, that the Railroad Company has elevated its tracks at its own expense; that it has erected the temporary structure called for by the contract, and has done everything required of it by that instrument,

except to remove the temporary structure, but this is to be done at the expense of the Kenner Company, and cannot be done until the bridge has been completed. Therefore the Railroad Company has proceeded so far with the contract as to entitle it to the bridge. In other words, it has paid for it under the terms of the contract.

[1] We think the correct rule, in such a case, is stated in Lee v. Harris, 85 Conn. 212, 82 Atl. 186. In that case the defendants, for a fixed consideration, agreed to convey to the plaintiffs a certain tract of land to provide a well upon the premises, and to make certain alterations and repairs. The plaintiffs performed all that was required of them by the contract by paying the consideration fixed, but the defendants failed to provide the well and to make some of the alterations and repairs. The defendants complained, on appeal, of the judgment of the trial court in two respects, the first complaint being that the court erred in not holding that the measure of damages was the difference in value between the property with and without the well concerning which difference no evidence had been offered. The court held, in passing upon this complaint, that the plaintiffs were entitled to such compensation as would leave them in the position they would have been had the contract been fully performed, and said:

"The general rule regarding breaches of contract, whether relating to real or personal estate, is that the injured party shall recover that compensation which will leave him as well off as he would have been had the contract been fully performed. Kidd v. McCormick, 83 N. Y. 391. There is no unbending rule as to the evidence by which such compensation is to be determined. In some cases the sum which will furnish such compensation may properly be ascertained by evidence of the difference in the value of the property, upon which structures are to be placed or repairs are to be made, with and without such repairs or structures. But 'the object of the parties ought to be attained as nearly as possible, and that is, that the specific act agreed to be done should

be performed. If the party omits to do what he stipulated, it is just, as a reasonable substitute, that he should pay the precise value of the thing which he contracted to do; such value to be estimated at the time when the act in question should have been executed.' Wells v. Abernathy, 5 Conn. 222, 227. Such value may often properly be shown by proof of what it would cost to perform the omitted acts."

From the foregoing quotation it appears that the injured party, when it is necessary to place him as nearly as possible in the same position as he would have been had the contract been fully performed, may recover the value of the thing contracted to be constructed and delivered, and that this value may be shown by proof of what it would have cost to construct the thing. In no other way than by receiving the value of the thing, which in this instance is the value of the bridge at the time it should have been delivered, do we see how the Railroad Company can be placed, after what it has done, as nearly as possible in the same position in which it would have been had the bridge been constructed and delivered. Hence we conclude that the Railroad Company discloses a cause of action in so suing. The case of American Surety Co. v. Woods, 105 Fed. 741, 45 C. C. A. 282, and 106 Fed. 263, 45 C. C. A. 282, cited by Maryland Casualty Company, is not in conflict with this ruling. The facts of the two cases are different.

[2] The Maryland Casualty Company also contends, under the exception of no cause of action, that article 4 of the contract, quoted above, and incorporated in the bond, makes it the duty of the Railroad Company to construct the bridge, in the event of the failure of the Kenner Company to do so, and, as the Railroad Company has not constructed it, that it is without a cause of action. The Maryland Casualty Company is in error. Article 4 does not so provide. The article merely accords the right to the Railroad Company to erect the bridge, in the event its construction should be delayed to an un-usual extent, the right to accrue, in such event, after the giving of a certain prescribed notice. The article in no sense makes it obligatory upon the Railroad Company to construct it. Such a provision, found in a contract, does not restrict the remedy of the one in whose favor it was inserted, nor does it exclude the recovery of actual damages attributable to the fault of the contractee. United States v. United States Fidelity & Guaranty Co., 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. 696.

For the foregoing reasons we conclude that the exception of no cause of action should be overruled.

The exception of prematurity seems to be based on the ground that, as the Railroad Company has not constructed the bridge, its claim is premature. This exception amounts to nothing more than a restatement, under an exception bearing a different name, of a phase of the exception of no cause of action, and is therefore overruled.

The Kenner Company has filed also, though as part of its answer, an exception of no cause of action, under which it has taken substantially the same positions as those taken by the Maryland Casualty Company, under the similar exception filed by it. For the reasons given for overruling the exception filed by the Maryland Casualty Company, the one filed by the Kenner Company must be overruled.

On the trial plaintiff established the allegations of its petition. In making its proof it has shown that the cost of constructing the bridge on the date it should have been delivered was $13,669. This cost, in our opinion, is the equivalent of the value of the bridge on that date, which value, as we have seen, constitutes the measure of damages. The lower court rendered judgment against the Kenner Company for that amount, and against the Maryland Casualty Company for $7,500, the amount of the bond signed by it, the judgment being in solido

*against the two companies to the extent of the amount of the bond, and against the Kenner Company for the balance, with legal interest from judicial demand. We think that the judgment is correct.*

For the reasons assigned, the judgment appealed from is affirmed; the appellants to pay the costs.

Rehearing denied by the WHOLE COURT.