MARYLAND CASUALTY CO. *et al.* v. TOWN OF WELLSTON.

No. 6332.    Opinion Filed March 2, 1915.

Rehearing Denied May 11, 1915.

(148 Pac. 691.)

1.  **PRINCIPAL AND AGENT—Existence of Agency—Delivery of Contractor's Bond.** Where a surety on a contractor's bond delivers the same to the principal for delivery to the obligee upon the execution of the contract, the principal in said bond thereby becomes the agent of the surety for such purpose.

2.  **PRINCIPAL AND SURETY—Release of Surety—Alteration of Instrument.** Where a contract for the erection of a system of waterworks provides for the delivery to the contractor of an entire issue of municipal bonds upon detaching certain coupons and the payment of a stipulated sum of money by the contractor, the addition thereto of a stipulation that bonds are to be delivered to contractor whenever coupons shall have been detached and money paid to town treasurer, as specified therein, does not constitute a material alteration of the contract, so as to release the surety.

3.  **PRINCIPAL AND SURETY—Obligation of Surety—Construction.** Section 1346, Rev. Laws 1910, provides that the rule of the common law requiring a strict construction of the obligations of a surety shall have no application to the obligation of a surety, guarantor, or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance.

4.    **PRINCIPAL AND SURETY—Release of Surety—Alteration of Contract.** Where a surety bond requires that the obligee shall retain that proportion, if any, which the contract specifies the obligee shall or may retain, of the value of the work performed or material furnished, in any event not less than 10 per cent., and the contract itself does not stipulate any amount to be retained, the retention by the obligee of $5,000, where the contract price is $17,750, will not release the surety.

5.    **MUNICIPAL CORPORATIONS—Waterworks—Breach of Contractor's Bond—Damages Recoverable.** The town of W. entered into a contract with S. & Son. to construct a system of waterworks for said town, by the terms of which S. & Son agreed to take ,the entire issue of the bonds of said town, issued for the purpose of constructing said waterworks, and in consideration of said bonds to construct a system of waterworks according to plans and specifications agreed upon, and a surety company executed and delivered to the town of W. an indemnity bond conditioned that "if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to perform said contract," and upon the execution and delivery of said contract and bond 'of indemnity the town delivered to the contractor its negotiable coupon bonds, and thereafter the contractor neglected and refused to construct said waterworks under the terms of said contract. **Held,** the town was entitled to recover upon the bond, as damages for a breach of the contract, a sum equal to the par value of the bonds so delivered.

(Syllabus by the Court.)

*Error from District Court, Lincoln County;*
*Chas. B. Wilson, Jr., Judge.*

Action by the Town of Wellston against the Maryland Casualty Company, a corporation, and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*James S. Ross* and *F. A. Rittenhouse,* for plaintiffs in error.

*Hoffman & Foster* and *Ira E. Billingslea,* for defendant in error.

HARDY, J.  Action by the town of Wellston against J. W. Smith & Son and the Maryland Casualty Company, to recover damages upon a surety bond for breach of a contract to erect a system of waterworks for the town of Wellston by said J. W. Smith & Son. The undisputed evidence shows that at a meeting of the board of trustees

of the town of Wellston on February 13, 1913, J. W. Smith & Son submitted a proposition to construct a system of waterworks for said town, and the minutes show that at said meeting the following proceedings were had:

"The object of the meeting being stated by the chair, being that of receiving and considering bids for bonds and construction of waterworks system in the town of Wellston, * * * bids as follows were then presented by the following persons, to-wit: * * * H. M. Williams then offered a motion, which was duly seconded by K. Davis, and unanimously carried, that the contract for bonds and installation of waterworks for the town of Wellston be awarded to J. W. Smith & Son, of Oklahoma City, on the following proposition, namely: To take the bonds at par and pay to town of Wellston $2,250 cash and indemnify the town by a good indemnity bond in the sum of $40,000 against all loss or damage and for the faithful performance of the contract according to the plans and specifications, contract to become effective when signed by the board of trustees of the town of Wellston."

At the said meeting the attorney for the town of Wellston was instructed:

"To prepare contract covering the foregoing proposition of J. W. Smith & Son, and that he be authorized to require above specified bond, and that said contract and bond be submitted to the board for approval at next meeting on the 16th day of February, 1912."

On February 16th, at a meeting of the board, the following proceedings were had, as shown by the minutes:

"Motion by Gault and seconded by Davis, and properly passed as follows: That contract for construction of waterworks read at this meeting be modified by inserting at the end of paragraph 12 the words 'bonds to be delivered to contractors whenever coupons shall have been detached and money paid to the town treasurer by contractors as specified in said contract,' and said president and clerk be and are ordered to sign contract for town and deliver same to contractor whenever the sufficiency of the indemnity bond of the Maryland Casualty Company is determined; the town clerk to ascertain facts thereto

and report to the board, the same to be approved by them."

At a meeting of the board on February 21st, the following proceedings were had, as shown by the minutes:

"The purpose of the meeting being stated, to hear report of clerk as to bond and report was then made by said clerk. After which the bond by motion as follows: Motion by Williams, seconded by Gault, that indemnity bond given by Smith & Son (one for $40,000 and one for $20,000) that the same be now approved. After which the following was by motion made and passed ordered incorporated in the minutes, to-wit: It is now hereby ordered by the board of trustees of the town of Wellston, Oklahoma, that in addition to the bonds heretofore provided to the said town by said contractors, J. W. Smith & Son, for the furnishing of materials and labor for the installation of a complete system of waterworks for said town, as set forth in the contract heretofore made by and between said contractors and said town to indemnify said town against all loss and damage said town might sustain by reason of the nonfulfillment of the terms of said contract on the part of said contractors, said contractors, upon the delivery of said bonds to them by said town, shall deposit with the treasurer of said town, for the use of said town, the sum of $5,000 (indemnity money) ; said sum to be repaid to said contractors as soon as said system of waterworks is completed and accepted by said town."

The bond sued upon in this case bears date of February 14, 1912, and was delivered by the Maryland Casualty Company to J. W. Smith, one of the principals therein, with authority to deliver to the town of Wellston when contract had been finally consummated and said bond had been approved and accepted by said town. The contract was signed by the town officials on the 21st day of February, and delivery of the contract and bond was on that day exchanged between the town and Smith & Son, the contractors and principals in said bond. At the time the bonds were delivered to Smith & Son, coupons were detached therefrom in accordance with the contract, and

they paid to the town the sum of $2,250 in cash and the sum of $5,000, as required by the proceedings on the 21st day of February, which sum the town still retained at the time this suit was commenced. Breach of the conditions of said building contract were made by Smith & Son, and the town brings this suit to recover for the value of the bonds delivered, and at the trial verdict was instructed in favor of the town, and a verdict rendered accordingly in the sum of $17,750, and plaintiffs in error bring the case here for review.

It is urged by the Maryland Casualty Company that there was a material alteration in the contract by inserting the provision for the delivery of the bonds, as set out in the statement of facts, which operated to release the company from liability, and that the town failed to comply with the terms of the bond in retaining the amount required of the contract price, and thereby the casualty company was released; and it is further urged that the town did not allege or prove a proper measure of damages to entitle it to recover, and that therefore the court erred in overruling the demurrer to plaintiff's petition, and to the evidence of plaintiff, and also erred in directing a verdict for the plaintiff.

The evidence discloses the fact that, after the execution of the bond by the casualty company, same was delivered to J. W. Smith, one of the principals therein, with authority to deliver to the town when the contract with the town was finally consummated, thereby constituting him the agent of the casualty company. 32 Cyc. 52; *Gritman v. U. S. Fidelity & Guaranty Co.*, 41 Wash. 77, 83 Pac. 6; *King Co. v. Ferry et al.*, 5 Wash. 536, 32 Pac. 538, 19 L. R. A. 500, 34 Am. St. Rep. 880. It is true that the bond refers to the contract as bearing date of February 14th, which was the original draft of the contract, but this draft itself contains the express stipulation:

"(13)    In consideration of the covenants hereinbefore made and the labor, materials, and machinery by the said party of the first part to be furnished as aforesaid, said party of the second part does hereby covenant, promise and agree to pay or cause to be paid the said sum of seventeen thousand and seven hundred and fifty dollars ($17,750.00) and the interest mentioned in paragraph two of this contract, in the manner following, to-wit: 'By delivering to the said party of the first part the entire issue of the negotiable coupon bonds issued for the purpose of constructing said waterworks system for said town, under date of July 1st, 1911, in the total amount of twenty thousand dollars ($20,000.00): * * * and before said bonds shall be delivered as aforesaid there shall be detached therefrom all the coupon bonds for the accrued interest on the entire issue from the first day of July, 1911, to the first day of January, 1912, and the interest which has heretofore accrued on said bonds shall be and remain the funds of the said Town of Wellston."

This stipulation, it is admitted, was in the draft of the contract accompanying the bond at the time the bond was tendered to the town for its approval on the 16th of February. The alteration which it is claimed was material in its character and operated to relieve the casualty company from liability upon its bond was made on the 16th day of February, before the delivery of said bond to the town, and before the signing of the contract by the town, and is as follows:

"Bonds to be delivered to contractors whenever coupons shall have been detached and money paid to town treasurer by contracts as above specified."

The trial court held, and properly so, we think, that this did not constitute a material alteration of the terms of the contract as originally drawn. It will be noticed that the original draft provided payment for the work as follows:

"By delivering to the said party of the first part the entire issue of negotiable coupon bonds issued for the pur-

pose of constructing said waterworks system for said town, * * * provided, however, that at the date of the delivery of said bonds to said party of the first part, said last party shall pay to the treasurer of said town in lawful money of the United States the sum of two thousand two hundred and fifty dollars ($2,250.00)."

And it also provided that there should be detached therefrom the coupon bonds for the accrued interest from July 1, 1911, to January 1, 1912. We cannot see any material difference in the legal effect of these stipulations, and, had this alteration not been made, it would not have prevented the town, under the terms of the contract, from delivering the bonds to the contractor upon the payment of the sum stipulated and the coupons being detached, provided such action was not in violation of some term of the bond; nor did the change in the draft of the contract complained of confer any additional power upon the town with reference to the delivery of said bonds; and therefore the court below committed no error in holding the alteration to be of such a nature as did not exonerate the casualty company from liability upon its bond.

It is further urged that, by the terms of the bond, the town was required to retain not less than 10 per cent. of the value of the work performed and materials furnished in the prosecution of said contract, until the completion thereof; and that, by reason of the fact that the town delivered the entire issue of bonds to the contractors prior to said time, this operated to effect a release of liability upon said bond. The stipulation in the bond is as follows:

"Fourth. That the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed, and shall also retain that proportion, if any, which said contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event than 10

per centum of such value), until the complete performance by the principal of all the terms, covenants, and conditions of said contract on the principal's part to be performed, and until the expiration of the time within which liens or notices of liens may be filed, and until the discharge of such liens, if any."

At the meeting of the board on February 21st, the date that said contract was finally signed by the town and the bond approved, it was required of the contractors to deposit with the town $5,000 as additional indemnity to be retained by the said town until the completion of the contract. This action of the town is complained of by the casualty company as not being a strict compliance with the terms of the bond, which requires that 10 per cent. shall be retained, and that therefore they are released. We do not think this contention can be sustained. The rule contended for in our judgment cannot be urged by the casualty company in this case, for the reason that the rule in this state is regulated by statute. Section 1346, Rev. Laws 1910, is as follows:

"The rule of the common law requiring a strict construction of the obligations of a surety shall have no application to the obligations of a surety, guarantor or indemnitor for hire, but all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance."

This statute was construed by this court, speaking through Mr. Justice Kane, in the case of *Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 33 Okla. 535, 126 Pac. 556, 42 L. R. A. (N. S.) 336, Ann. Cas. 1914B, 399, where it is said:

"Under the old rule, a surety was a favorite of the law, his obligation was voluntarily assumed as an act of friendship, without reward, and therefore the courts were astute to relieve him of liability, and the rule applied to the construction of his obligation was *strictissimi juris*. On account of the rise of surety companies making it a business to assume these obligations for hire, the reason

for the old rule passed away, and many of the courts, in dealing with the obligation of a surety for hire, have, in the absence of a statute requiring it, adopted the rule of liberal construction. The statute under consideration prescribed a new rule of construction to guide the courts of this state in construing contracts of suretyship, but does not affect the rights of a surety, where there is no ambiguity in the contract."

The plaintiffs in error urge that, because $5,000 was retained instead of 10 per cent. of the contract price, this crippled the contractor in the prosecution of his work, and thereby lessened his ability to carry on the same. We think this objection cannot be successfully urged. The bond expressly authorized the parties to agree upon the amount that should be retained, not less than 10 per cent. In our opinion the retention by the town of $5,000 as additional indemnity inured to the benefit of the surety; and the payment in advance of $12,500 to the contractor was certainly a sufficient advance to enable him to begin and carry on the prosecution of his work under the terms of the contract, which payment was expressly authorized by the contract, and did not violate any condition of the bond.

It is also urged that the court erred in instructing the verdict for the town in the amount sued for, which was $17,750, being the contract price agreed upon for the erection of the proposed system of waterworks and the amount of the negotiable bonds of the town delivered to the contractor in payment for said proposed system; and in support of this it is urged that the town cannot recover unless it be made to appear that the town has actually completed the system of waterworks according to the plans and specifications, in which event they could recover for the sum so expended, or that they must allege and prove what it would reasonably cost to construct such a system according to said plans and specifications.

By the terms of the bond the surety company obligates itself as follows:

"Now, therefore, the condition of this obligation is such that, if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to perform said contract, then this obligation shall be void, otherwise to remain in full force and effect."

By reference to this provision of the bond it is seen that the casualty company expressly contracts to indemnify the town against any loss or damage directly arising by reason of the failure of the principal to perform his contract; and the bond and contract nowhere, in express terms or by reasonable implication, require that the town shall construct said waterworks as a condition precedent to a right of action upon the bond. Smith & Son wholly failed to construct said system of waterworks as called for by the contract, and their default was complete, and the town was undoubtedly damaged in the amount of its bonds delivered to the contractor as a direct result of his failure to perform his contract; and, where he wholly defaulted and abandoned his contract, the most direct and immediate loss sustained by the town was the value of the bonds it had delivered to him on his contract, and for which he had delivered nothing in return. It has been held a number of times that the town need not wait until the completion of the work to bring suit for breach of the contract, but it may sue upon a breach thereof and recover such damages as, under legal rules, it can show it has sustained. 3 Sutherland on Damages (3d Ed.) 699; *American Surety Co. v. Woods*, 105 Fed. 746, 45 C. C. A. 287; *Simons v. Wittmann*, 113 Mo. App. 357, 88 S. W. 791. No one would question for a moment that the failure of the contractor to comply with his contract would result in certain damages to the town, and would be the proximate cause of such damages. In this case the town has

turned over to the contractor $17,750, par value, of its negotiable bonds, which are a liability against the municipality, and which have been converted by the principal in the bond to his own use, and a breach of the contract committed; and that the town has been damaged no one will deny. The question is: What is the amount of such damages, and how should this amount be determined? Clearly the amount of the actual damages which the town will suffer is the amount of its liability upon the bonds delivered to the contractor, which, under all of the undisputed evidence and the agreed facts, amounts to $17,750. The bonds are negotiable and constitute a liability against the town, and in the hands of innocent holders can be enforced irrespective of whether or not the waterworks provided for by contract have been constructed in accordance therewith. We are not cited to any case directly parallel with the case at bar, but the rule as applicable to the facts in this case is analogous to that rule which prevails where a contract is made for the complete construction of a building for an entire contract price, and under such circumstances, where the contractor willfully refuses to complete the contract, the owner is entitled to a return of the installments paid during the progress of the work. *Public Schools v. Bennett*, 27 N. J. Law, 513, 517, 72 Am. Dec. 373, 374; *Tompkins v. Dudley*, 25 N. Y. 272, 82 Am. Dec. 349; *Bartlett v. Bisbey*, 27 Tex. Civ. App. 405, 408, 66 S. W. 70; and authorities cited and discussed in these cases.

On February 23, 1915, the Supreme Court of the United States delivered an opinion in the case of *U. S. v. U. S. Fidelity & Guaranty Co.*, 236 U. S. 512, 35 Sup. Ct. 298, 39 L. Ed. 696, that by analogy lends strong support to the conclusions we have reached in this case. In the case just mentioned the United States government had entered into a contract with one Boggs to construct a

stone mess hall and kitchen at the Rice Station Indian School in Arizona, for the performance of which the guaranty company was his surety on a bond in the penal sum of $6,500. The contractor began work under the contract and did certain work and furnished certain materials, and received during the progress thereof payments amounting to $7,895.40. The government refused to accept the building, and, while the same was in possession of the contractor, it was destroyed by fire; and thereafter he neglected and refused to erect the building according to the plans and specifications called for in his contract. Thereafter the government let a contract to another person, and constructed the building. Suit was brought on the bond, and the Circuit Court of Appeals for the Ninth Circuit held that the guaranty company was not liable. The Supreme Court of the United States reversed the case and held that the government was entitled to recover all payments made, with interest thereon. The opinion says:

"And when he wholly defaulted, and in effect abandoned the contract, the most direct and immediate loss sustained by the government was the moneys it had paid him on account, and for which he had given nothing in return. Conceding that there was not, technically, a failure of consideration, because his promise, and not its performance, was in strictness the consideration (*United & G. Rubber Mfg. Co. v. Conard*, 80 N. J. Law, 286, 293, 78 Atl. 203, Ann. Cas. 1912A, 412), still the substance of the matter is the same, so far as concerns the measure of the detriment to the promisee."

We therefore hold that, under the terms of this bond, when the contractor procured possession of the negotiable bonds of the town and wholly defaulted in the construction of the waterworks system contracted for, a breach of the contract thereby occurred, and that the town was not required to complete the waterworks before its right of action accrued upon the bond, but that it might maintain its action and recover thereon the amount of the bonds

delivered to the contractor, which is clearly the direct and proximate result of his breach and clearly contemplated by the terms of the bond set out.

Complaint is made of the action of the court in directing the verdict because there was some contradiction in the testimony. Whatever contradictions, if any there were, we think were on matters not decisive of this case, and that as above stated, upon the uncontroverted evidence, the town was entitled to judgment.

The judgment of the trial court is therefore affirmed.

All the Justices concur.