**AMERICAN CONST. CO. v. LASSIG et al.***
(No. 1782.)

Court of Civil Appeals of Texas. Beaumont. April 5, 1929.

First Rehearing Denied June 26, 1929. Second Rehearing Denied July 17, 1929.

*Writ of error granted.

798

J. E. Price and King & Wood, all of Houston, for appellant.

King, Battaile & Sonfield, of Houston, for appellees.

WALKER, J. Appellant, American Construction Company, brought this suit against appellees, Oswald J. Lassig and Southern Surety Company, to recover on debt and for damages for breach of a building contract. Appellant was contractor for the construction of a hospital building in the city of Houston. It sublet the stonework, estimated at 9,600 cubic feet, to appellee Lassig for $48,-000. Lassig was to deliver 2,000 cubic feet of stone per month, beginning with August 1, 1923, and to continue his deliveries at that rate until the work was finished. He was given, however, 160 days in which to finish the work under his contract, and was to pay liquidated damages at the rate of $50 per day for each and every day his part of the work was unfinished after the expiration of the 160 days. Lassig executed to appellant a bond with appellee Southern Surety Company as his surety, to secure the performance of his obligations under the contract. On the ground that Lassig had defaulted in delivering the required stone, appellant, on the 15th of February, 1924, canceled his contract. Lassig had not in any month while his contract was in force delivered the amount of stone required of him, but from the inception of his contract until the time it was canceled delivered only 1,442.6 cubic feet of stone, for

which appellant paid him at the rate of $4 per cubic foot.

After canceling Lassig's contract, appellant relet the unfinished work to another contractor, paying therefor practically the difference between the original contract price of $48,000 and the amount paid Lassig for the 1,442.6 cubic feet actually delivered. Appellant was delayed in the construction of the building, and was forced thereby to pay $5,035 in extra labor bills, which it charged against Lassig. Appellant also claimed liquidated damages against Lassig for 150 days at $50 per day. At the inception of the contract, appellant advanced Lassig $10,000, and furnished him, at his request, the necessary setting drawings and models. On the facts stated, appellant instituted this suit against appellee Lassig and his surety, praying for judgment for the $10,000 advancement, the liquidated damages in the sum of $7,500, extra labor expense in the sum of $5,035, the value of the setting drawings in the sum of $1,100, and of the models in the sum of $1,167.28. Appellant also prayed for interest on these several items. Lassig answered by general demurrer, general denial, and by way of cross-action that appellant wrongfully breached the contract, causing him damages in the loss of profits in the sum of $12,000. The Southern Surety Company answered as did Lassig, and, in addition, pleaded unauthorized novations in the contract on which it was surety.

The trial was to a jury, and, on appellant's demands against Lassig, the jury found against its plea for liquidated damages and for the extra labor expense, that is, the extra labor expense was not proximately caused by any delay on the part of Lassig in furnishing the stone as called for in the contract. We affirm these findings as having support in the evidence. We say further, on the question of liquidated damages, that this issue was foreclosed against appellant by the terms of the contract itself, in that it was therein provided that liquidated damages were to be allowed only after the expiration of the 160 days, and, as appellant canceled the contract before the 160 days expired, no liquidated damages were recoverable. The judgment of the trial court denying appellant recovery on these two items is affirmed.

The jury fixed the value of the setting drawings at $720, and the trial court, on the undisputed evidence, fixed the value of the models at $1,167.28. In its judgment the trial court awarded appellant recovery for these two items in the sums stated, with interest as pleaded, and, as no assignment is before us attacking the correctness of the judgment as to these two items, it is affirmed in this respect.

Without dispute, it was shown that appellant advanced Lassig $10,000, on which Lassig had paid, under the terms of his contract, 15 per cent. of the value of the stone delivered, which the trial court found to be $722.41, and no assignment is before us against this allowance. This sum was allowed as a credit against the $10,000, leaving a balance of $9,277.59, which was awarded to appellant in the judgment of the trial court, but without interest. Appellant insists that it should have been awarded interest on this item from the 15th of February, 1924. This assignment is sustained. It was provided in the contract between appellant and Lassig that "in the event this contract is cancelled, any unpaid balance of said Ten Thousand ($10,000.00) Dollars advanced shall then be immediately due and payable to contractor." The trial court's judgment as to the item of $9,277.59 is reformed by allowing interest thereon from the 15th of February, 1924, at 6 per cent. per annum, and, as so reformed, affirmed.

Appellant challenges Lassig's pleadings in his cross-action as being bad on general demurrer. These assignments are overruled, but, if the objections to the pleadings should be presented on another trial as special exceptions, they should be sustained. Lassig's cross-action was bad on special exceptions if properly presented, but good on general demurrer.

Lassig's cross-action was based on the theory that appellant breached the contract by failing and refusing to receive stone properly prepared and properly delivered by him. The facts were as follows: Lassig was very slow in delivering the stone. One time in the early part of the contract the architect refused a large quantity of stone that had been delivered, of which Lassig made complaint. The architect and appellant then agreed that a man named Ulrich, one of appellant's servants, should be detailed to work with Lassig and inspect Lassig's stone before it was prepared for the building and before it was delivered. Ulrich entered upon the discharge of this duty, with Lassig's consent, about October. The relations between him and Lassig were not pleasant. At one time, after Lassig had prepared a large quantity of stone, Ulrich made a wholesale rejection of all of it, offering no explanation of his action, but the issue was raised that he was arbitrary, unreasonable, and wilful in his conduct. The jury found that Ulrich rejected stone that was according to the samples furnished the architect; that this rejection was the cause of some of the delay by Lassig in delivering the stone, and that this delay extended from the "time of the wholesale rejection in November, 1923, to cancellation of contract."

The jury found further that Ulrich rejected the stone with knowledge that it was according to the samples furnished the architect, and that this rejection prevented Lassig from completing the performance of his contract. The jury further found that Ulrich instructed Lassig to deliver the stone in different quantities than that specified in the contract, that Lassig delivered the stone as required by Ul-

rich, and that Ulrich was authorized to instruct Lassig to make the deliveries as actually made by him. The jury further found that it would have reasonably cost Lassig $33,600 to furnish the stone required by his contract. The jury's findings on all the issues submitted to it have abundant support in the evidence. On this last finding Lassig would have had a profit on his contract of $14,400 had he been permitted to finish it, but, as he limited his damages by his plea to $12,000, the trial court limited his recovery against appellant to that sum, and found against appellant for that sum. On this finding the trial court entered the following judgment in Lassig's favor. On the undisputed evidence appellant had paid Lassig for the stone delivered at the rate of $4 per cubic foot. On the verdict of the jury fixing the total cost at $33,600, the trial court estimated the cost to Lassig of delivering the 1,442.6 cubic feet at $3.50 per cubic foot, thereby finding that Lassig had a profit of 50 cents per cubic foot or $721.30 on the stone actually delivered. As his total profits were fixed at $12,000, and as appellant, on the last conclusion, had paid Lassig $721.30 of the profits, the court deducted that sum from the $12,000 and allowed Lassig recovery for the balance, with 6 per cent. interest from the date the contract was breached. From that sum the trial court deducted the several items already discussed, found by it in appellant's favor, and awarded appellee Lassig judgment against appellant for the balance, being $1,916.28. Appellant has many assignments against this part of the trial court's judgment. We have already overruled the assignments attacking Lassig's pleadings. But the following assignments must be sustained:

■ Appellant would be liable to Lassig for the acts of Ulrich only in the event Ulrich was its agent, with authority from it to do, in its name and in its behalf, the things actually done by him. The agency of Ulrich was a controverted issue. The evidence was very strong that he was a special agent of the architect, acting entirely under the architect's authority, with no duty to appellant. There was evidence, however, that he was appellant's agent. On this issue appellant requested the trial court to submit to the jury this question, which was refused: "Was Ulrich authorized by the plaintiff to reject any stone?" This question carried to the jury an essential element of Lassig's cross-action. As appellant requested its submission, the trial court was without authority to make a finding thereon. North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W.(2d) 59.

■ Again, there was no basis in the jury's verdict whereby the trial court could estimate Lassig's profit on the unfinished work. If appellant wrongfully breached the contract, Lassig's damages on the facts of this case were the profit he would have made on the unfinished work. The stone already delivered

had been paid for, and was out of the case. Neither party made any complaint regarding this stone. By proper issues the proportionate value of the stone delivered to all the stone called for by the contract should have been determined and this amount taken from the $48,000, the original contract. Lassig's measure of recovery was the difference between that sum and the cost of delivering the balance of the stone. From the jury's verdict, we cannot, nor could the trial court, find what it would have cost Lassig to finish his contract, nor can we determine the proportionate value of the stone delivered. The court was in error in assuming that the proportionate value of all the stone was $3.50 per cubic foot and entering judgment on that basis. The stone actually delivered was plain stone, the cheapest stone called for by the contract. About 85 per cent. of the stone was of that character, but the remaining 15 per cent. was very expensive, being highly carved. There is no basis in the evidence by which the trial court, independent of or in aid of the jury's verdict, could have determined on a proportionate basis the value of the stone delivered nor its cost to Lassig. Therefore the finding that Lassig made a profit of $722.41, which is the basis of the judgment in Lassig's favor, has no support. It follows that the judgment on Lassig's cross-action must be reversed and remanded for a new trial.

Without discussing the merits of the propositions of the Southern Surety Company that Lassig and appellant had changed the original contract, the judgment in its favor relieving it of liability on its bond is affirmed. As we construe this bond, there was no obligation on the part of the surety company to indemnify appellant for the $10,000 nor for the setting drawings nor for the models. As appellant's recovery is limited to these items, it has no cause of action under the bond.

The issues between Lassig and the Southern Surety Company, as made by their pleadings, were settled by the court's judgment in a manner satisfactory to them, and those issues are not before us for review.

Affirmed in part, in part reformed and affirmed, and in part reversed and remanded.

## On Rehearing.

Appellant says that we are in error in holding that it could not recover liquidated damages against Lassig on the ground that it took the contract out of his hands before the expiration of the 160 days allowed him for performance. It is appellant's proposition that Lassig was liable for such liquidated damages as flowed from his breach. Southern Pacific Co. v. Globe Indemnity Co. (C. C. A.) 21 F.(2d) 288, supports appellant's proposition, but also cites a line of authorities supporting our legal proposition. If we concede the soundness of appellant's proposition, the issue thus suggested was submitted to the

jury as follows, and answered in the negative:

"Was any money paid by the plaintiff, American Construction Company, under its contract with the Herman Hospital Estate, as liquidated damages for delay in the completion of the building within the time required by the contract, as a direct and proximate result of the failure, if any, of defendant Lassig in the performance of his contract with the plaintiff?"

On this finding it is not necessary for us to decide whether appellant, as a matter of law, lost its claim for liquidated damages by taking the contract away from Lassig before the expiration of the time of performance. Therefore we withdraw what we said in our original opinion in construing the contract on this issue.

We agree with appellant that it sued for the cost of the setting drawings and models and the $10,000 not only on the theory of "debt" but also as items of "damages" flowing from the breach of the contract.

We are in error in our original opinion in our construction of the surety bond to the effect that "there was no obligation on the part of the surety company to indemnify appellant for the $10,000.00 nor for the setting drawings nor for the models." Lassig was unconditionally bound by his contract to pay for the setting drawings and models. The following clause of the contract covered the $10,000 sued for:

"It is understood that this contractor has advanced to the sub-contractor the sum of ten thousand ($10,000.00) dollars, necessary to enable the sub-contractor to equip his plant to carry out this contract, the receipt of which sum is acknowledged by the sub-contractor, and it is agreed that the contractor shall be entitled to withhold out of each installment of eighty-five per cent (85%) to be paid this sub-contractor as above provided fifteen per cent (15%) and apply such fifteen per cent (15%) towards the payment of such advance, and the remaining seventy per cent (70%) of such installment shall be paid in cash to this sub-contractor, and the contractor shall continue to withhold fifteen per cent (15%) out of each eighty-five per cent (85%) out of each such eighty-five per cent (85%) installment, until said advance of ten thousand ($10,000.00) dollars is paid off. It being understood that out of the fifteen per cent (15%) withheld; that is the fifteen per cent (15%) remaining after the payment of said eighty-five per cent (85%), said contract shall be entitled to pay itself for any balance, and in the event this contract is cancelled, any unpaid balance of said ten thousand ($10,000.-00) dollars advance shall then be immediately due and payable to the contractor."

The condition of the bond was as follows:

"Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said Obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; provided, however, that this bond is issued subject to the following conditions and provisions."

Maryland Casualty Co. v. Town of Wellston, 47 Okl. 417, 148 P. 691 and United States v. United States Fid. & G. Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696, are direct authority that these items, excluded by us from the conditions of the bond, constituted part of "the terms, covenants and conditions" to be performed by Lassig under his contract, and therefore were within the conditions of the bond. As appellant, under our original opinion, is entitled to recover these items against Lassig, and, under what we are now saying, also against appellee the Southern Surety Company, unless the judgment in its favor was properly rendered on other grounds, it becomes necessary that we review the counter propositions advanced by the Southern Surety Company in support of the judgment rendered in its favor in the lower court. On this point a further statement from the record is necessary.

In the event Lassig failed in the performance of any of the terms of the contract, appellant, by its terms, was authorized to take the contract out of his hands and proceed to complete the work under its terms or relet it at Lassig's cost and expense. The language of these options was as follows:

"Should the sub-contractor at any time * * * fail in the performance of any of the terms, stipulations * * * then, in such event at the option of the contractor * * * the contractor may proceed thereupon to complete the work under the terms of said contract at the cost and expense of the sub-contractor, or at the option of the contractor the work may be re-sublet at the cost of the said sub-contractor, subject to the terms and conditions of Art. II hereof."

Article II thus referred to related only to certain arbitration conditions.

On this language of the contract appellant insists that it had two causes of action against Lassig and his surety; one for damages, under the express terms of the contract, on the theory that it pursued the contract in reletting the work, and that Bedford-Carthage Stone Company, through its contract, completed the work according to the terms of Lassig's contract; and the other for damages flowing from Lassig's breach, independent of the contractual remedies. United States v. United States Fid. & G. Co., supra, supports appellant in its construction of its contract and bond to the effect that relief may be sought for the breach of such a contract on either or both of the theories thus suggested.

Appellees insist that appellant has based its cause of action, by its petition, solely upon the first ground; that is, that it relet the work and had it completed under the terms of Lassig's contract. We are inclined to believe that appellees have correctly construed appellant's petition, but it is not necessary, in the view we take of their counter propositions, to determine this point definitely, and therefore, without reviewing the petition further, for the purposes of this opinion, we assume that appellees are correct on this point.

Thus construing appellant's cause of action, the Southern Surety Company seeks to have the judgment in its favor affirmed on the ground of material alterations or differences between the Lassig contract and the Bedford-Carthage Stone contract. This contention is based upon Mass. Bonding & Ins. Co. v. Davis, 274 S. W. 230, by this court, and, if sustained by the facts, the judgment of the lower court in favor of the surety should be affirmed. The following facts and circumstances constitute the basis of the contention: (a) The Lassig contract called for "Duval, Texas, limestone from Travis County, Texas." The Bedford-Carthage contract called for stone by a different name and from a different quarry. The cost of these two classes of stone was the same, and in all material respects there was no difference between the stone called for in the Lassig contract and that called for in the Bedford-Carthage contract. Each was satisfactory to the architects, and complied with the conditions of appellant's original contract. It follows that the difference in the two classes of stone did not constitute a material alteration. (b) The time for the delivery of the stone by Lassig is set out in the original opinion. Under the Bedford-Carthage contract the delivery was to be within four months and "to keep up with the progress of the work." While the terms of the delivery were not the same, the difference was not material, and in no way entered into the cost of the contract as completed by Bedford-Carthage Stone Company. The difference in time between the two contracts is satisfactorily explained by the amount of stone that had already been delivered by Lassig. (c) Lassig was to be paid 85 per cent. of his monthly estimates, but Bedford-Carthage Stone Company was paid only 67⅔ per cent. This difference in the amount paid under the two contracts did not enter into the ultimate cost of the Bedford-Carthage contract, and therefore was not a material alteration or difference. (d) Lassig had the right to deliver the stone at the building and to do the necessary carving after it was placed or installed in the building. Bedford-Carthage Stone Company was required to deliver the stone in a finished condition. It was not shown that this difference added a cent to the cost of completing the work, and therefore was not a material alteration. (e) The Lassig contract provided that he was to be paid monthly "85% of the value proportionate to the amount of the contract price of this contract, of all stone delivered." Appellant's president and Lassig testified that they agreed upon $4 per cubic foot as the proportionate value of all stone delivered by Lassig, and they settled upon that basis. The jury found that its proportionate value was $5. On the jury's verdict, the Southern Surety Company insists that it was released. In our original opinion we have reversed this finding of the jury as being without support. It was not even raised by the evidence, and any finding of alteration or difference growing out of this agreement between appellant and Lassig would not only be against the great weight and preponderance of the evidence but wholly without any basis whatever. (f) After Lassig had been in default for some months, appellant wrote him and sent a copy of the letter to his surety, notifying him that it was canceling the contract and was going to take the work out of his hands and complete it under the conditions of the contract. This was not, in fact, done, but upon Lassig's urgent request appellant, as it had a right to do under the terms of the contract, indulged him further in his efforts to deliver the stone, and did not cancel the contract and take it out of his hands until about three months after this letter was written. These facts do not support the contention of the Southern Surety Company that appellant, by writing the letter, had canceled Lassig's contract and taken the work out of his hands and, by further indulging him, made a new contract.

As we understand the brief of the Southern Surety Company, the circumstances thus relied upon are all the facts brought forward by it to show an alteration in Lassig's contract or a material difference between his contract and the one under which Bedford-Carthage Stone Company completed the work. As thus reviewed, these facts do not bring the defense of the Southern Surety Company within the rule announced by us in the Davis Case, supra.

It follows that the judgment of the lower court in favor of the Southern Surety Company must be reversed. We do not here render judgment in favor of appellant against the Southern Surety Company, because we find in its last argument this statement: "That there should be an open reversal of the judgment in favor of the surety." Therefore the cause is remanded to the lower court for a new trial on the issue of appellant's demand against the Southern Surety Company. This order is also necessary because of the following additional proposition advanced by appellant: "The question of Ulrich's agency for appellant might likewise, on the facts that develop on another trial, control our right to recover of the surety for the setting drawings, the models, and/or the advance."

In all other respects, except as herein indicated, appellant's motion for rehearing is overruled. Appellee Lassig's motion for rehearing is also overruled.