CHESAPEAKE TRANSIT CO. v. MOTT.

(Circuit Court of Appeals, Third Circuit. February 15, 1909. On Rehearing, May 28, 1909.)

No. 18.

1. TRIAL (§ 169*)—DIRECTION OF VERDICT—INSUFFICIENCY OF EVIDENCE.

Where, in an action for breach of a contract to construct a railroad, by nonperformance, the plaintiff's evidence was of such an indefinite and unsatisfactory character that neither a jury to which it was submitted nor the court was able to determine therefrom the amount of damages, if any, sustained by plaintiff, it was not error for the court, after the jury had been unable to reach a verdict, to direct a verdict for the defendant.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 169.*]

2. TRIAL (§ 251*)—INSTRUCTIONS—ISSUES.

Where the declaration, in an action for failure to perform a contract for building a railroad, alleged as the only ground of recovery that plaintiff was obliged to procure the work done at an increased cost above the contract price, and the case was tried on that theory, the failure of the court to submit to the jury other grounds of recovery is not error for which the judgment will be reversed, especially where no request for such instructions was made and no objection or exception taken to the omission.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 251.*]

In Error to Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 158 Fed. 850.

Wm. A. Glasgow, Jr., for plaintiff in error.
V. Gilpin Robinson, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

BUFFINGTON, Circuit Judge. In the court below, the Chesapeake Transit Company, hereafter called the plaintiff, brought an action of assumpsit, for use of A. M. Kerr and J. Edward Cole, against Abram C. Mott, hereafter called the defendant. The action was to recover damages from Mott, a surety, for nonperformance by his principals, Isaac A. Walker & Son, of a contract with the plaintiff to build a steam railroad from Norfolk, Va., to Cape Henry. In pursuance of the Pennsylvania practice act of May 25, 1887, which requires the plaintiff to file "a concise statement of the plaintiff's demand," and which shall be replied to by affidavit, plaintiff filed a declaration wherein it set forth the written contract between the parties, the failure of the Walkers to perform, and the rescission thereof by plaintiff. The declaration then alleged:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"By reason of the failure and neglect and refusal of the said Isaac A. Walker & Son to comply with and perform the stipulations aforesaid, and to prosecute said work in accordance therewith, the plaintiff, Chesapeake Transit Company, was obliged to and did procure the completion of said work by other parties at a cost exceeding by more than $20,000 the cost provided in the aforesaid contract for said work between the plaintiff, Chesapeake Transit Company, and the defendants, Isaac A. Walker & Son."

To this the defendant replied by affidavit denying the completion of the contract as alleged above. On the trial of the cause, the plaintiff, instead of pursuing the usual course of proving the alleged performance of the contracted work by those who did it, called no such witnesses, but called an engineer who took the contract which plaintiff had afterwards entered into with other parties for building an electric road (which would also be operated by steam, and in which there was a terminal change), and assumed the cost of this electric road built under the second contract was a proper standard of cost for the exclusively steam road, which Walker & Son were to build under their contract. The engineer then figured out what part and cost of the work done under the second or electric road contract should be charged to the first, or steam road contract. This testimony was received under objection, and submitted to the jury. They were unable to reach a verdict, whereupon the court, on this being reported, gave binding instructions to find for the defendant. On motion for a new trial the court said:

"But there is a further reason for denying the plaintiff's right to recover, namely, that the evidence offered in support of the right was not definite enough to enable the damage to be ascertained. The plaintiff was well aware that the two contracts, each taken as a whole, were not capable of comparison, and, accordingly, recovery was sought for the increased cost of one item only —an item that was necessarily common to both contracts, namely, the cost of the permanent way, including, in that phrase, grading, ties, rails, bridges, and the like. But no effort was made to prove the difference by the best and most direct method; that is, by proving for what price Walker & Son had agreed to do this work, if such price could be satisfactorily discovered, and then by proving what the work actually cost, as it was done upon the ground by the National Construction Company. The method adopted was to take the contract price under the second agreement, attempt to reduce it to a cash basis, deduct therefrom the estimate of certain witnesses concerning the fair value (but not the actual cost, so far as appears) of the work and materials that were peculiar to the second contract, and assume the remainder to be the actual cost of the permanent way. This remainder was then compared with the engineer's estimate of what the same cost would probably have been under the Walker contract, and the difference was put forward as the plaintiff's actual loss. Many complications and uncertainties of detail, which I shall not take time to specify, are involved in this method of calculation, but, even as just stated, I think it is manifest that the method is largely conjectural, and could not safely be relied upon to produce a result even approximately correct. And when, to the difficulties thus appearing, are added the difficulties arising from the numerous changes in detail between the two contracts, it becomes impossible, I think, to reach a conclusion that is even fairly satisfactory. If I may judge by my own experience, no one can read the evidence without being bewildered by the effort to make the frequent allowances and assumptions that must be made in order to follow the plaintiff's calculation, and without believing that this difficulty furnishes the probable reason why no agreement upon a verdict could be reached. If the case were now before me without a jury, I should find it impossible to reach a conclusion that I could defend by specifying the particular pages of the testimony upon which I relied."

A new trial having been refused, and judgment entered for defendant on this verdict, the plaintiff sued out this writ, and assigned for error:

"(1) The court erred in directing the jury to return a verdict for the defendant in this cause. (2) The court erred in entering the judgment in favor of the defendant against the plaintiff in this cause."

The main question here involved is the action of the court in giving binding instructions for the defendant. Now, the burden rested on the plaintiff to furnish such proofs as warranted a verdict in its favor. But the proofs here furnished were such that the jury was unable to find a verdict; the trial judge has called attention to the unusual and unsatisfactory character of the evidence as quoted above, and has said if a jury was waived he would be unable to reach a verdict; and we are free to confess that after a perusal of the whole testimony we have reached the same conclusion. Such being the case, and the proof being of such an unsatisfactory character that a judge trained in the marshaling and analysis of facts is unable to find a verdict, were the case tried by him without a jury, was it error to say the plaintiff had not met the duty resting upon it of producing evidence of such character as to warrant a verdict in its favor? It was simply a case of furnishing insufficient evidence. After a careful consideration of the proofs, we cannot say as matter of law the court was guilty of error in giving binding instructions to the jury. What else could it do if the evidence was such that neither court nor jury could find a verdict? The plaintiff simply failed to meet the burden of proof the law cast upon it. The two assignments of error are therefore not sustained.

It is, however, contended that under the assignments of error we should convict the court of error because, as stated in plaintiff's brief, the court—

"overlooked certain items of actual damage which are in evidence in the case and undisputed, which arise directly from the abandonment of the written contract, and are in no way connected with the new contract or what was done thereunder."

The rule of this court (court rule 11, 79 C. C. A. xxvii, 150 Fed. xxvii) provides that an assignment of error "shall set out separately and particularly each error asserted and intended to be argued." This has not been done, and, even if the case was one where we were inclined to relax the rule, there is no place in the record where the court below was called to pass on this question and where its action or omission was made the subject of objection or exception. The most that can be said is that it was "overlooked" by the judge. But in the way this case was tried we do not think it was even overlooked by the court. In the first place, the pleadings, as we have seen, placed the plaintiff's right to recover expressly on the ground that it procured—

"the completion of said work by other parties at a cost exceeding by more than $20,000 the cost provided in the aforesaid contract; * * * wherefore the sum of twenty thousand dollars ($20,000), with interest as aforesaid, is justly due and owing by the said defendants to the said plaintiffs, to recover which this suit has been brought."

169 F.—35

It will be noted that no allegation was made of anything done, or expenditure made, by the plaintiff in pursuance of the first contract, and of which it lost the benefit. But not only was no such claim mentioned or sued for, but the case was not tried on the theory that any such claim was in issue. The court, without objection or point so requesting, made no mention of such claim in its charge. Its attention was not called to the alleged omission as ground for new trial; it was not discussed in the court's full opinion refusing a new trial; and, finally, it is not specially assigned for error, or was any ruling made upon it or exception taken on which an assignment could be based. Manifestly it is an afterthought, and if, as stated in plaintiff's brief, it was an oversight of the court, the court's attention should have been called to it. That not having been done, and the case having been tried on the ground of recovery expressly declared upon, it would be unfair to reverse the case on grounds upon which the trial court never ruled and therefore could have committed no error.

The judgment below will be affirmed.

## On Rehearing.

PER CURIAM. Rehearing denied.

ARCHBALD, District Judge. I concur in the affirmance of the judgment and the refusal of a reargument, and I agree with what has been said as to the work done under the second or substitute contract affording no evidence of the damage for failure to perform the first one. Not that it might not have done so, perhaps, but that it did not, because of the way that it was sought to make use of it. I would not, however, rest the decision there, but would go further, and hold, with the court below, that there was an abandonment of the first contract, which released the surety; a pronouncement upon this point being called for, in my judgment, in order to meet some things which are urged as ground for a reargument. As is there pointed out, claim was also made at the trial, as an element of damage, for the amount expended for the new issue of bonds, $845, made necessary, as it is charged, by the default on the first contract, as well as for the additional amount, some $600, required to be paid to secure a right of way over the Babcock property, condemnation proceedings having to be resorted to, where it could have been had for nothing, if the condition of the deed which was at first given for it—to begin the road within 6 months and complete it within 12 months—had been complied with. Not only was evidence as to each of these introduced and insisted on over the objection of counsel, but, as it now appears, they were pressed upon the court on the motion for a new trial, the same as they are here, as reasons why a verdict should not have been directed, and are not now brought forward for the first time, as assumed in the former opinion. Both of these items, however, are effectually disposed of, if the original contract was in fact abandoned. It may not be accurate to speak of this as an alteration, or to altogether deal with it on that basis, although it may amount to that. The better position is that the second contract was such a departure

from that for the performance of which the defendant was surety that he could not in justice be held for it, and it was so in effect treated by the court below, as is shown by the opinion refusing a new trial, where a comparison between the two is made, and the differences pointed out, which, reference being had to the full discussion which there appears, does not need to be repeated. 158 Fed. 850. It is true that the second contract was not entered into until after there had been a default on the first one, by which the defendant became liable to the extent that the plaintiff was thereby damaged. But the damage was merely nominal at first, and it by no means followed that there would be anything beyond that, which could only be told by the sequel. Nor did the fact that liability had attached prevent the discharge of the surety, as argued, if anything was done to his prejudice afterwards. John A. Tolman Co. v. Hunter, 113 Mo. App. 671, 88 S. W. 636. No doubt the plaintiff could not be expected to rest with the situation, and was entitled to go ahead and get some one to build the road, as it had been projected. And it may be that, in order to do so, some changes were necessary, without which it would have been impossible. But that did not justify a radical variance, amounting to an altogether new and different contract, such as was entered into. The defendant stood sponsor for the performance of the original, and for that only; and, if he was to be held, the substance of it had to be adhered to. And when a new one was entered into, with terms and conditions essentially different, he was no longer liable. Unquestionably he would be released, if the changes were introduced after the contract had been entered upon, and it is no different in principle where they were embodied in a substitute. If the latter expressed what was wanted, or was even compelled by a change in the circumstances, the plaintiff in adopting it must abide the consequences. It is a complete answer, to any attempt to charge the defendant with it, that it was not the one for which he undertook to be responsible. American Bonding Company v. U. S. (C. C. A.) 167 Fed. 910.

It is said, however, that, as the direct result of the default of the contractor, and in no way involved in the change in the contract, the defendant was at least liable for the two items of damage mentioned above—the expense of printing the original issue of bonds, which were made useless, and the extra amount which the plaintiff had to pay for a right of way over the Babcock property—which were disregarded. It appears, with regard to the former, that $1,700 was put in the hands of the contractor, who paid out $855 to have the trust mortgage prepared, and the bonds engraved and printed; the rest of the money—$600 trustee's fees, and $245 revenue taxes—being appropriated by him to his own purposes. Of course, the defendant, as surety, was in no way liable for the money which was so misappropriated. Neither was he, in my judgment, for the expenditures which were rendered useless by the change in the bond issue. It was not made clear to me at the argument why he should be; nor, upon looking into the matter, am I any better persuaded of it. This expenditure was not lost because of the default of the contractor, apart from the change which was made in the contract, but solely

because, by the terms of the new contract, the road was lengthened, and its character modified from an exclusively steam road to one of combined steam and electricity, which compelled a rewriting of the mortgage. The defendant being released, as we have seen, from whatever was incident to the change, is relieved from this item along with the others. Had the original contract been adhered to, we should have heard nothing of this matter, and that effectually disposes of it.

Nor does the claim for the extra amount paid for the Babcock right of way stand much differently. No doubt the plaintiff got a deed for this in the beginning without having to pay anything, and had subsequently to condemn the land and pay $600; the condition on which the deed was given, that the road should be completed within 12 months, not having been complied with. But that is not all that is to be said of it. Not only is it a question how far the plaintiff is chargeable with the delay by which the deed was invalidated, but by the further provision of the deed, and as a part consideration for it, the company covenanted to construct a ditch on each side of its track, and to keep open all the drains necessary to relieve the farm traversed, and also to furnish certain wire fencing and posts for the erection of a fence along one side of the right of way. All of this was got rid of when condemnation proceedings were resorted to, which more than offsets, in all probability, the $600 which was paid as the outcome; or, even if the saving was not complete, it was considerable, and, not having been definitely shown, the actual damage is so uncertain and problematical that nothing can be predicated on it.

There is no force to the suggestion that, the contract having been broken, the plaintiff was at least entitled to nominal damages. There might be something in this if there was a right to establish, or costs were involved, neither of which is the case. That there was a right to maintain, to which the recovery of judgment was material, will not, of course, be pretended. And, the jurisdiction of the court being dependent on the diverse citizenship of the parties, the plaintiff, by the express provision of the statute, in order to get costs, was required to recover a judgment of at least $500. Rev. St. 968 (U. S. Comp. St. 1901, p. 702). As to this the Pennsylvania practice, which is relied on, is not controlling. It is true that nominal damages might save the plaintiff from having to pay the defendant's costs, except as it was expressly adjudged to do so. McCarthy v. American Thread Co. (C. C.) 143 Fed. 678. But the original contract having been abandoned, and the plaintiff, outside of that, having shown nothing substantial, there is no reason why the defendant should be put to the cost and expense of defending the suit, where the right of the plaintiff to maintain it was merely nominal.

Neither is there anything in the further suggestion that, damages exceeding the penalty of the bond having been shown, it does not matter as to anything above that. This begs the whole question. The method of proof resorted to at the trial was such that nothing reliable could be deduced from it, in the face of which it is by no means to be conceded that damages exceeding the face of the bond were in fact established.

While, then, the petition for a rehearing is not without substance, for the reasons given, I see no occasion for disturbing the judgment of affirmance, which has been entered.